UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| AMMAR ALJAZAIRI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case #1:26-cv-87 |
| | ) |
| GLENDELL HILL, | ) |
| Prince William County Sheriff's Office | ) |
| 9311 Lee Avenue | ) |
| Manassas, VA 20110, | ) |
| | ) |
| and | ) |
| | ) |
| DAVID BISHOP | ) |
| Prince William County Sheriff's Office | ) |
| 9311 Lee Avenue | ) |
| Manassas, VA 20110, | ) |
| | ) |
|     Defendants. | ) |

COMPLAINT

Preliminary and Jurisdictional Statement

1. Plaintiff Ammar Aljazairi was arrested for trespass while peacefully protesting, in a public forum, the treatment of his brother in the Prince William County Adult Detention Center. The arrest was based on an unwritten, unposted, personal "policy" created by defendant Glendale Hill, the county sheriff, addressing who could say and do what in the referenced public forum. The policy, such as it was, was enforced in an arbitrary and capricious manner, in manifest disregard of basic First Amendment principles under clearly established law. The charges against Mr. Aljazairi were promptly dismissed on First Amendment grounds. Mr. Aljazairi now sues Sheriff Glendale Hill, who ordered his arrest, and Deputy David Bishop, who

arrested him, for violation of his First Amendment rights and for the damages arising out of his arrest. This case arises under the First Amendment, the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C. §1983. This court has jurisdiction under 28 U.S.C. §1331. The court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Mr. Aljaiziri's claims under state law, which arise out of the facts giving rise to his federal claims.

Parties

2. Plaintiff Ammar Aljazairi is an adult resident of Stafford County, Virginia.

3. Defendant Glendell Hill is and at all relevant times was the sheriff of Prince William County. He runs the Prince William County Adult Detention Center ("ADC") and also provides security for the adjacent areas. He is sued in his individual capacity for damages.

4. Defendants David Bishop was at all relevant times a deputy sheriff in the employ and under the supervision of defendant Glendell Hill, and arrested Mr. Aljazairi at the direction of Sheriff Hill.

Claim for Relief

5. Beginning in May 2024, Mr. Aljazairi's brother Mustafa Aljazairi was remanded to the custody of Sheriff Hill at the ADC.[1] Concerned about his brother's condition in the ADC, Mr. Aljazairi and members of his family repeatedly sought assistance from ADC staff with calls and other messages. These inquiries were to no avail.

---

[1] All referenced to "Mr. Aljazairi" are to the plaintiff, Ammar Aljazairi. His brother Mustafa Aljazairi is referred to herein as Mustafa.

6. In front of the building housing the Prince William courthouse and also Sheriff Hill's office is a circular public space where persons can congregate. A photograph of the forum and surrounding area appears as exhibit 1.

7. Prior to its use by Mr. Aljazairi, the circular public space had been used for weddings, auctions, foreclosure sales, and other events. A video of one such auction appears at: https://youtu.be/QnLH_G7nesw.

8. Until after the dismissal on First Amendment grounds of the charges against Mr. Aljazairi, there was no articulated or posted policy, rules, regulations or permitting protocol governing use of this forum, simply decisions made by whim of Sheriff Hill.

9. Having consulted with his family members about Mustafa's plight, Mr. Aljazairi decided to protest peacefully in an effort to bring public attention to his brother's medical needs and perceived flaws in the criminal investigation into his brother's case. He selected a location that was freely available and near where both the county sheriff and the county commonwealth's attorney had their offices.

10. Specifically, starting in April 2024, Mr. Aljazairi began a vigil in the parking lot adjacent to the courthouse. On some occasions, he moved his vigil to the circulat forum where he was eventually arrested. He continued his vigil until the day of his arrest.

11. Mr. ALjazairi's vigil included the display of a sign, approximately 3' x 5', made from a white sheet, reciting "Amy Ashworth[2] protects jail that murders inmates." While he spoke freely with people who inquired regarding his concerns, he did not shout. When told by a deputy

---

[2]Ms. Ashworth was and remains the Commonwealth's Attorney for Prince William County.

sheriff that he could not use sound amplification, he stopped doing so. He used no profane or inappropriate language.  He peacefully sought corrective action by county officials with power to address his concerns about his brother.

12.  On July 3, 2024, Mr. Aljazairi appeared on the circular forum in question and recommenced his vigil. His vigil was peaceful and quiet.

13.  Sheriff Hill arrived at the site of Mr. Aljazairi's vigil and informed him that he was receiving "a warning" and that he had to move his vigil to what defendant Hill described as a "designated area," pointing with his right arm to an uncertain location.

14. Sheriff Hill did not explain why Mr. Aljazairi had to leave the circular forum. Sheriff Hill had no document memorializing the existence or purpose of any "designated area" for demonstrations, vigils or protests.  By his later admission in court, no such policy was posted anywhere.

15.  Sheriff Hill's determination of which kinds of speech would and would not be tolerated in the circular forum was based not on any existing, known, or publicized policy setting forth appropriate time, place or manner restrictions.  Rather, it was based on his personal assessment of what was appropriate or inappropriate.  As he later testified in court, Sheriff Hill drew the line for what was permissible according to the volume of speech, "or if a person is doing something that's unusual in that particular area."  He testified that a person might lawfully appear in the referenced forum with a sign saying "I love cats," and talk animatedly at trial about loving cats.

16.  Mr. Aljazairi refused to leave the public forum where he was, insisting that he had a First Amendment right to protest peacefully where he was.

17. Sheriff Hill then advised Mr. Aljazairi that if he did not leave he would be arrested. When Mr. Aljazairi asked what charge he would be arrested for, defendant Hill did not answer other than to tell Mr. Aljazairi to do as he was told.

18. Sheriff Hill's decision to arrest Mr. Aljazairi for trespass was motivated by a desire to suppress Mr. Aljazairi's lawful protests that necessarily and publicly criticized him as keeper of the jail where a prisoner was allegedly being abused.

19. It was clearly established law at the time that speech in an otherwise available public forum could not be barred for any such retaliatory reason, and that subject to constitutionally appropriate time, place and manner restrictions, peaceful protests or vigils could not be prohibited because the content of their message was disfavored by government.

20. When Mr. Aljazairi did not leave, he was arrested by Deputy Bishop, acting at the direction of Sheriff Hill. He was not charged with violating Sheriff Hill's "policy," but with trespass, for staying in the forum at issue after having been told to leave.

21. The events summarized in ¶¶10-20 are clearly visible on a video taken by a body-camera worn by one of the officers in attendance. Its dispositive contents under *Scott v. Harris,* 550 U.S. 372 (2007), may be viewed at: https://www.youtube.com/watch?v=Q_-CAW8yvZ4.

22. At the time of Mr. Aljazairi's arrest, it had long been settled constitutional law that the determination of who may speak and who may not could not be left to the unbridled discretion of a government official, "because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763-64 (1988). It was settled law, and defendants knew, that Sheriff Hill's whim was not a basis for

prohibiting persons to use the circular forum for their own lawful purposes, and that for him to do so was arbitrary, capricious, and unconstitutional.

23. At his general district court trial on the trespass charge against Mr. Aljazairi, Defendant Hill testified that while the public space at issue be used by members of the public for some purposes, it could not be sued for "protests." He also testified, however, that he might permit some protest activity if it were peaceful and quiet, At no time did he contend that Mr. Aljazairi's protest on the day of his arrest was other than peaceful and quiet. Dep. Bishop also testified in support of Mr. Aljazairi's prosecution.

24. Having been convicted of tresspass in general district court based, *inter alia,* on the testimony of defendants Hill and Bishop, Ms. Aljazairi appealed to circuit court, where the charges against him were dismissed on First Amendment grounds.

25. Mr. Aljazairi suffered wrongful arrest in violation of his constitutional rights; the embarrassment and inconvenience of being publicly arrested, processed as a criminal suspect, and tried as a criminal defendant; the need to retain counsel; and related injuries.

Causes of Action

Count 1: First Amendment Violation

26. By directing the arrest of Mr. Aljazairi (Sheriff Hill) and arresting him (Dep. Bishop) for his lawful vigil in front of the courthouse, each defendant penalized him for peacefully and lawfully expressing his views in a public forum, in violation of the First Amendment, rendering them liable to him for damages under 42 U.S.C. §1983.

### Count 2: Fourth Amendment Violation

27. By their actions set forth above, Sheriff Hill unreasonably caused Mr. Aljazairi to be seized, and Dep. Bishop unreasonably seized him, in violation of the Fourth Amendment, rendering these defendants liable to Mr. Aljazairi for damages under 42 U.S.C. §1983.

### Count 4: False Arrest

28. By their actions set forth above Sheriff Hill caused the false arrest of Mr. Aljazairi, and Dep. Bishop falsely arrested him, rendering them liable for damages under Virginia law.

### Count 5: Malicious Prosecution

29. Defendants' actions in securing the arrest of Mr. Aljazairi, and their testifying against him in an effort to secure his conviction, as set forth above, were motivated by their desire to suppress Mr. Aljazairi's lawful protests that necessarily and publicly criticized Sheriff Hill as keeper of the ADC.  These actions, which were malicious, willful, and without probable cause, render them  liable for damages for malicious prosecution.

Wherefore, Mr. Aljazairi seeks an order awarding him:

* Compensatory and punitive damages against defendants, jointly and severally, in accordance with the proof trial;
* His costs, including reasonable attorneys fees, and
* Such other relief as is just.

Mr. Aljazairi requests trial by jury.

Respectfully submitted,

AMMAR ALJAZAIRI,

By counsel

Dated: January 13, 2026

Counsel for Plaintiff:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
**AljazairiAmmar\Pleadings\2026-0113-Complaint**


//s// Abigail S. Grand
Abigail S. Grand, #100578
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1100 / Fax: 703-684-1104
agrand@robinhoodesq.com